NOT FOR PUBLICATION
UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| OLIVIA REDDICK,<br><br>     Plaintiff,<br>v.<br><br>ALLSTATE NEW JERSEY INSURANCE COMPANY,<br><br>     Defendant | Civ. Action No. 11-365 (KSH)<br><br><br><br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

I. Introduction

  Plaintiff Olivia Reddick ("Plaintiff") filed a class action complaint alleging that defendant Allstate New Jersey Insurance Company ("defendant") has engaged in a practice of refusing to pay replacement costs if an insured party has not completed repairs on or replaced damaged property within 180 days of actual cash value payment. Plaintiff contends that this practice violates the terms of defendant's standard contract with its customers and also runs afoul New Jersey insurance law. Defendant filed a motion to dismiss, asserting that plaintiff's seven counts all fail to state a claim on which relief can be granted.

II. Facts and Procedural History

A. The Pleaded Facts

  Plaintiff alleges that in the mid-1990s, defendant implemented a new business model designed to reduce the number of homeowner claims resulting in payment. (Compl. ¶¶ 19–26.)

1

To that end, defendant uses a standard form "throughout the State of New Jersey for insuring dwellings and other structures against loss by fire and other perils." (*Id.* ¶ 27.) The policy provides that if the insured "do[es] not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis." (*Id.* ¶ 32.) However, the policy further provides: "You may make claim for additional payment as described in paragraph c, and paragraph d if applicable, if you repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment." (*Id.*) In paragraph c, the policy provides:

> We will make additional payment to reimburse you for cost in excess of actual cash value if <u>you</u> repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminates, toxins or pollutants as required to complete repair or replacement of that part of a building structure(s) damaged by a covered loss.

(*Id.*)

Paragraph d provides: "[W]e will make additional payment to reimburse you for cost in excess of actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 180 days of the actual cash value payment." (*Id.*)

Plaintiff holds property insurance through defendant under this policy. (*Id.* ¶ 11.) At some unspecified point, her home and some personal property were damaged. (*Id.*) Defendant paid her the actual cash value of the loss, but because she only undertook and did not complete repair and replacement within 180 days of receiving the actual cash value payment, defendant did not pay her the full replacement value. (*Id.*)

B. Procedural History

Plaintiff filed a complaint against defendant on January 20, 2011. [D.E. 1.] The complaint contains seven counts: (1) breach of contract (Compl. ¶¶ 40–56); (2) demand for declaratory judgment that defendant's policy only requires repairs or replacements to be initiated, not completed, within 180 days of payment of actual cash value (*id.* ¶¶ 57–61); (3) breach of a separate and distinct contract formed upon defendant's agreement to pay the actual cash value of the damaged property (*id.* ¶¶ 62–65); (4) fraud (*id.* ¶¶ 66–81); (5) breach of fiduciary duty (*id.* ¶¶ 82–87); (6) violation of the New Jersey Consumer Fraud Act (*id.* ¶¶ 88–93); and (7) rescission, (*id.* ¶¶ 94–99).

On March 31, 2011, defendant filed a motion to dismiss. [D.E. 16.]

III. Standard of Review

*Federal Rule of Civil Procedure* 8(a)(2) provides that a claim for relief must include "a short and plain statement of the claim showing that the pleader is entitled to relief." The Rule "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Consequently, mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'" unless the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 556–57, 570).

When deciding whether plaintiff has stated a claim on which relief can be granted, the Court "must accept as true all of the allegations contained in a complaint," provided that they are genuine factual allegations and not masked legal conclusions. *Iqbal*, 129 S. Ct. at 1949–50. A

legal conclusion "can provide the framework of a complaint," but only if it is "supported by factual allegations." *Id.* at 1950.

Under *Federal Rule of Civil Procedure* 9(b), a heightened standard applies to an allegation of fraud. A plaintiff bringing a fraud claim "must state with particularity the circumstances constituting fraud," though "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." A properly-pleaded fraud claim should "ensure that defendants are placed on notice of the 'precise misconduct with which they are charged'" and should "safeguard defendants against spurious charges." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).

IV. Discussion

Defendant asserts that the complaint fails to state a claim for relief in each of its seven counts. This Court will address each count individually, but the parties' arguments consistently return to two issues regarding plaintiff's insurance policy with defendant: (1) whether a claimant seeking replacement costs must only begin repairs or replacement within 180 days of receiving actual cash value payment, or whether the claimant must complete those repairs within 180 days; and (2) whether the policy falls short of the minimum requirements for an insurance policy under New Jersey law.

A. Breach of Contract

Defendant argues that for a claimant to obtain replacement payments, the contract requires that she completely repair or replace the property, in whole, within 180 days. Under this interpretation, defendant fully performed its contractual obligations.

4

1. The Policy Language

Under New Jersey law, the first step in interpreting an insurance contract is to "examine the plain language of the policy," and "if the terms are clear, they 'are to be given their plain, ordinary meaning.'" *Pizzulo v. N.J. Manuf. Ins. Co.*, 196 N.J. 251, 270 (2008) (quoting *Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 595 (2001)). The emphasis on the plain language of the statute is an acknowledgement that "courts should interpret the policy as written and avoid writing a better insurance policy than the one purchased." *Id.* (quoting *President v. Jenkins*, 180 N.J. 550, 562 (2004)). If the contract contains an ambiguity, then it should be interpreted "to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning." *Id.* at 270–71 (quoting *Zacarias*, 168 N.J. at 595).

Plaintiff's policy with defendant provides that she is entitled only to actual cash value payment, except that: "You may make claim for additional payment . . . if you repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment." (Compl. ¶ 32.) It is undisputed that plaintiff initiated repair and replacement within 180 days, but that she did not finish the repairs and replacements within that timeframe. Defendant argues that plaintiff has failed to state a claim for breach of contract because the contract's plain language indicates that a claimant is not entitled to the "additional payment" unless she *fully* repairs or replaces the covered property within 180 days of the actual cash value payment.

The complaint alleges that "[a]t the least, said language is ambiguous" and that plaintiff should be permitted to enforce her "reasonable interpretation that repair or replacement must only be undertaken within 180 days of the payment of the actual cash value in order to qualify." (Compl. ¶ 47; *see also* Pl.'s Br. Opp. Mot. Dismiss 14 ("[I]n the absence of the word 'complete,'

5

the policy language should be interpreted in favor of the insured as required under New Jersey law.")) This allegation, however, is a legal conclusion masquerading as fact, and thus is not entitled to any special deference simply because plaintiff included it in the pleadings. *See Iqbal*, 129 S. Ct. at 1949.

The policy requires a claimant to "repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment." (Compl. ¶ 32.) Plaintiff's interpretation would require this Court to read content into the contract that is not there. The policy does not say that plaintiff must "begin to repair" or "start to repair" within 180 days; the policy says the insured must "repair" or "replace" within that timeframe. The relevant dictionary definition of the word "repair" is "to restore by replacing a part or putting together what is torn or broken," *Webster's Third New International Dictionary* 1923 (1993), and the relevant dictionary definition of the word "replace" is "to take the place of" or to "serve as a substitute for or successor of," *id.* at 1925. Accordingly, to attain the replacement costs, plaintiff must "restore" the damaged property within 180 days or find a new item "to take the place of" the old property within 180 days. *See Woodhams v. Allstate Fire & Cas. Co.*, 748 F. Supp. 2d 211, 219 (S.D.N.Y. 2010) (interpreting same policy language in same way).

Plaintiff asserts that in the absence of the word "complete," the policy is ambiguous and should be read in her favor. But just because the policy could have included more language to reiterate an already-clear meaning does not mean that the policy must do so. Plaintiff cites numerous cases to show instances in which defendant has used some variation of the word "complete" in other policies. *See, e.g.*, *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 189 n.4 (2d Cir. 2006) ("When the full cost of repair or replacement is more than $1,000 or more than 5% of the whole amount of insurance applicable to said dwelling, we shall not be liable for any loss

under paragraph a. or subparagraph b.2) of these provisions unless and until actual repair or replacement is completed."); *Hilley v. Allstate Ins. Co.*, 562 So. 2d 184, 188 (Ala. 1990) ("We will not pay more than the actual cash value of the damaged property until the repair or replacement is completed."); *Fraley v. Allstate Ins. Co.*, 97 Cal. Rptr. 2d 386, 387 (Cal. Ct. App. 2000) ("We will not pay more than the actual cash value of the damaged building structure until the repair or replacement is completed."); *Orosco v. Allstate*, No. 90-0302509S, 1992 WL 393092, at *1 (Conn. Super. Ct. Dec. 24, 1992) (policy states that Allstate "will not pay more than the actual cash value of the damage until the repair or replacement is completed"); *Kane v. State Farm Fire & Cas. Co.*, 841 A.2d 1038, 1042 (Pa. Super. Ct. 2003) ("We will pay the cost to repair or replace . . . when the repair or the replacement is actually completed."). None of these cases involves the interpretation of the precise language at issue here. More significantly, the cases all use the terms "repair" and "replace" as nouns in the subject of a sentence, the predicate of which speaks to completion. By contrast, the relevant language of plaintiff's policy uses "repair" and "replace" as verbs, thus eliminating the grammatical imperative to add language to complete the sentence and give it meaning.

Taken to its logical conclusion, plaintiff's argument means that because defendant has sometimes opted to refer to a "repair or replacement" that is "completed," it must always use that formulation. But so long as the language is clear, defendant need not consider itself bound by some specific formulation simply because it has chosen to use that formulation in other contexts. This Court can discern no meaningful difference between a statement that "[w]e will not pay more than the actual cash value of the damaged property until the repair or replacement is completed" and a variation stating that "[w]e will not pay more than the actual cash value of the

damages property until *the insured repairs or replaces the property*."[1]  Accordingly, plaintiff has failed to state a claim because the policy's plain language indicates that plaintiff is not entitled to the replacement costs unless she repairs or replaces the damaged property within 180 days of the actual cash value payment.

        2. <u>Conformity with New Jersey Insurance Law</u>

Plaintiff alleges that her policy with defendant provides that "when the policy provisions conflict with the statutes of the state in which the residence premise is located, the provisions are amended to conform to such statutes." (Compl. ¶ 33.)  The policy further provides that "[i]n the event of a covered loss, we have the option to a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time." (*Id.*)  Plaintiff contends that defendant breached the contract because the 180-day language falls short of policy requirements under New Jersey law.

N.J.S.A. 17:36-5.19 provides: "Every . . . fire insurance policy shall insure, limited to the amounts of insurance specified therein, the named insured legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and qualify within a reasonable time after such loss . . . ." *See also* N.J.S.A. 17:36-5.20 (requiring language to state that company retains option to "repair, rebuild or replace the property destroyed or damaged with

---

[1] Plaintiff also cites to *Caroselli v. Allstate Prop. & Cas. Ins. Co.*, No. 10-1671, 2010 WL 3239356, at *4 (E.D. Pa. Aug. 16, 2010), because it interpreted the same language to mean that plaintiff is eligible for additional coverage "only if he undertook to rebuild his home."  This statement, however, was made in dicta, and the question relevant here was not in the court's focus there.  Moreover, *Caroselli* contains other language that is just as favorable to defendant's interpretation.  *See id.* at *6 ("[B]y failing to repair his damaged property within 180 days from receipt of Allstate's final payment, Plaintiff has failed to satisfy the condition precedent under the policy and is not entitled to make a claim for additional sums." (quoting *Renna v. Allstate Ins. Co.*, No. 92-20261, 1993 WL 404092, at *3 (N.D. Cal. Sept. 27, 1993)).

other of like kind and quality within a reasonable time"). Plaintiff argues that state law imposes more favorable standards for plaintiff than her actual policy because the statute contains "no language which requires the completion of the repairs within 180 days and, in fact, mandates within 'a reasonable time after the loss.'" (Compl. ¶ 34.)

Contrary to plaintiff's arguments, N.J.S.A. 17:36-5.19 does not set forth a requirement for how long an insurance company must provide an insured to repair or replace property in question; rather, it simply sets the ceiling on the amount that the policy must cover. The policy provides for the "actual cash value" required under the statute and therefore does not run afoul state law.

Similarly, N.J.S.A. 17:36-5.20 sets forth nothing more than the company's option to repair or replace the property itself, so long as it does so in a reasonable time. The fact that the policy grants defendant this option does not change the outcome here. Plaintiff complains that "Allstate apparently argues that its obligations with respect to repair and replacement should be afforded the flexibility of a 'reasonable time' but not the insured's." (Pl.'s Br. Opp. Mot. Dismiss 24.) But even assuming that the policy imposes this double standard, the mere existence of a double standard does not mean that the policy is less than favorable state law mandates. Plaintiff's argument does not set forth a genuine contradiction between the policy and the state standard, but instead attempts to impute a reference to repairs and replacements into a different context. In the absence of a genuine contradiction, state law does not amend plaintiff's policy and plaintiff has failed to state a claim for breach of contract.

B. <u>Declaratory Judgment</u>

Plaintiff's second count seeks a declaratory judgment "that an insured who has suffered covered loss to covered property does not need to complete repair or replacement of the damaged

9

property within 180 days of payment of the Actual Cash Value in order to subsequently be entitled to the benefits of the replacement cost coverage once repair or replacement is complete." (Compl. ¶ 61.) For the same reasons that plaintiff has not stated a claim for breach of contract under the same provision of her policy, she has also not stated a claim that she is entitled to a declaratory judgment on the matter.

    C.  <u>Breach of the "Separate and Distinct" Settlement Agreement</u>

The complaint alleges that when plaintiff "entered into an agreement with Allstate that resulted in the payment . . . of the Actual Cash Value of the damaged property, that agreement constituted a contract separate and distinct from the insurance policy contract." (Compl. ¶ 63.) Plaintiff alleges that this new contract "is premised upon the terms of the policy including expressed and implied terms of an obligation and undertaking by Allstate to pay the insured the repair or replacement cost holdback for the damaged property according to the language of the policy and insurance laws of the State of New Jersey and conforming terms and conditions of the insurance policy." (*Id.*) Defendant argues that plaintiff has failed to demonstrate that a new contract was formed and that even if it was, defendant did not breach it. (Def.'s Br. Supp. Mot. Dismiss 18.)

Even assuming that plaintiff has adequately set forth a claim that the payment agreement constituted a new contract, plaintiff has not stated a claim for breach of that contract. Plaintiff's complaint argues that the conduct constituting breach consisted of "requir[ing] the insured to COMPLETELY repair or replace damaged property as a condition of obtaining the replacement cost coverage holdback proceeds and/or the extended limits benefits." (Compl. ¶ 64.) In other words, plaintiff alleges that the new contract consisted of the same terms as the policy contract and that the same actions constituting a breach of the policy contract also constituted a breach of

10

the new contract. Because the terms and actions are identical, plaintiff has failed to state a claim for breach of the "separate and distinct" contract for the same reasons that she failed to state a claim for breach of the policy contract.

   D.  <u>Fraud</u>

Plaintiff alleges that defendant has participated in fraud by "interpreting its replacement cost policy language, and adjusting covered losses on covered property, in a way that is contrary to the insurance law of New Jersey." (Compl. ¶ 71.) The complaint further alleges that defendant's "acts of marketing and selling policies with replacement benefits coverage terms and provisions that [defendant] has no intention of ever honoring are willful, deliberate, and done with full knowledge and intention that [defendant] will not fulfill the contractual terms of its coverage." (*Id.* ¶ 75.) Specifically, defendant's advertising does not "advise the consuming public . . . of the differences between [defendant's] non-conforming language and the conforming language utilized by every other insurer in the market place," and defendant refuses "to allow consumers seeking to purchase its product to see the policy language being purchased until significantly after the purchase is consummated and premiums paid." (*Id.* ¶¶ 77–78.)

Fraud under New Jersey law consists of five elements: "(1) a material misrepresentation of presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172–73 (2005) (quoting *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)). As discussed above, claims of fraud must be pleaded with particularity. *See* Fed. R. Civ. P. 9(b).

Plaintiff has failed to state a claim that defendant committed fraud by interpreting its policy contract in a manner contrary to its plain language and contrary to New Jersey law. As

11

discussed above, defendant's interpretation of the contract is consistent with both its language and New Jersey law.  Therefore, defendant cannot have made a "material misrepresentation" by enforcing the terms of the policy.

Plaintiff also argues that defendant's advertising does not warn the public of the difference between defendant's policy and the competitors' "conforming" policies.  Notably, plaintiff does not allege that defendant's advertising and marketing materials ever claim that the policies are identical.  Nor does it matter, because as discussed above, defendant's policy conforms to New Jersey law, so it is unnecessary for defendant to advertise that it does not.

Plaintiff's final basis for her fraud claim is that defendant does not allow consumers to see the policy language until after they purchase the policy.  Plaintiff does not explain, however, precisely how this failure constitutes a "material misrepresentation of presently existing or past fact."  The allegation is not that consumers are given a false policy to induce purchase, and as discussed above, plaintiff's claim that the advertising materials give a false impression of the policy's coverage fails because the policy conforms to New Jersey law.  In the absence of a factual assertion that the failure to provide the policy language somehow misrepresented the policy's coverage or content, plaintiff has failed to state a claim for fraud.

 E. <u>Breach of Fiduciary Duty</u>

The complaint alleges that defendant established a fiduciary duty to plaintiff by: "[i]nforming insureds that they are in 'good hands' and can repose trust in" defendant; maintaining "superior knowledge" of its practices on paying replacement value; and promising to conform the contract to state law. (Compl. ¶ 83.)  Plaintiff contends that defendant breached this duty through a "pattern and practice of breaching their obligations under the policies," thus "depriv[ing] and cheat[ing]" plaintiff of the coverage for which she paid. (*Id.* ¶ 85.)  Defendant

12

responds that it does not owe plaintiff a fiduciary duty, that it did not breach any fiduciary duty that might exist, and that the filed rate doctrine bars plaintiff's desired relief of disgorgement and restitution.

New Jersey law provides that "a fiduciary relationship can arise between an insurer and an insured 'in special circumstances.'" *In re Tri-Armored Servs.*, 332 B.R. 690, 735 (Bankr. D. N.J. 2005) (Wizmur, J.) (quoting *Ellmex Constr. Co. v. Republic Ins. Co.*, 202 N.J. Super. 195, 206 (App. Div. 1985), *certif. denied*, 103 N.J. 453 (1986)). Such a relationship arises, for example, when an insurer "reserve[s] the right to settle a third party claim." *Id.* (quoting *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.*, 65 N.J. 474, 492 (1974)). But absent a special relationship, parties "operating in the normal contractual posture, not as principal and agent," are typically not in a fiduciary relationship. *Id.*

Here, the complaint does not allege anything to suggest that the relationship between plaintiff and defendant transcends an ordinary contractual relationship and moves into the realm of a relationship between fiduciaries. Plaintiff's basis for finding a fiduciary relationship is essentially that she was in an inferior bargaining position and that defendant represented that consumers are in "good hands" with defendant. If plaintiff's standard for finding a fiduciary duty were correct, then a great many ordinary contracts would form a fiduciary relationship between parties. Plaintiff's interpretation of an insurer-insured fiduciary relationship is a far more expansive standard than the New Jersey Supreme Court articulated in *Rova Farms*, where the insurer operated with the enhanced powers of an agent for the insured. *See* 65 N.J. at 492–93. And even that standard for the creation of a fiduciary duty is somewhat limited in its implications. Accordingly, plaintiff has not pleaded sufficient facts to find that a fiduciary relationship existed between plaintiff and defendant.

Even if plaintiff had pleaded the existence of a fiduciary duty, she has pleaded that the breach consists of the same conduct that comprised the breach of contract claim. (*See* Compl. ¶ 85.) For the same reasons that plaintiff has not pleaded a claim for breach of contract, plaintiff has not, as a matter of substance, stated a claim that defendant breached any fiduciary duty that might exist.

F. New Jersey Consumer Fraud Act

A claim under the New Jersey Consumer Fraud Act ("CFA") consists of three elements: "(1) an unlawful practice, (2) an 'ascertainable loss,' and (3) 'a causal relationship between the unlawful conduct and the ascertainable loss.'" *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 576 (2011) (quoting *Lee v. Carter-Reed Co.*, 203 N.J. 496, 521 (2010)). Plaintiff's complaint alleges that defendant violated the CFA through "misleading, egregious and deceptive actions . . . in refusing to process Plaintiff's claims for replacement cost and extended limits benefits properly." (Compl. ¶ 91.)

The CFA provides that it is an "unlawful practice" for a party to engage in "[t]he act, use or employment . . . of any unconscionable commercial practice." N.J.S.A. 56:8-2. Plaintiff contends that her factual allegations, "if proven, would easily permit a jury to find [defendant's] policy interpretation and refusal to pay replacement cost unless repair or replacement is complete within 180 days are unconscionable practices." (Pl.'s Br. Opp. Mot. Dismiss 39.) For purposes of the CFA, the term "unconscionable practices" receives an expansive definition. *See Jefferson Loan Co., Inc. v. Session*, 397 N.J. Super. 520, 535 (App. Div. 2008) ("Unconscionability is to be interpreted liberally in order 'to effectuate the public purpose of the CFA.'" (quoting *Assocs. Home Equity Servs., Inc. v. Troup*, 343 N.J. Super. 254, 278 (App. Div. 2001))).

Here, however, plaintiff's allegations do not establish an unconscionable practice. As discussed above, defendant's practices, as described in the complaint, are consistent with the

14

language of the policy contract, and defendant's decision to abide by those terms cannot constitute an unconscionable practice. Accordingly, plaintiff's complaint has not established that defendant engaged in an "unlawful practice" under the CFA, and she has not stated a claim that defendant violated the CFA.

    G.  Rescission and Return of Premiums

Plaintiff's final count alleges that defendant sold and enforced policies contrary to the policy's plain language and that defendant is therefore

> liable to Plaintiff . . . for a pro rata refund of the premiums allocable to the fair rescission value of the replacement coverage which plaintiff paid for but which [defendant] has refused to provide to them and which [defendant] never had any intention of providing to plaintiff except under circumstances that were practically impossible to occur and which defeated and frustrated the coverage.

(Compl. ¶ 99.)

As detailed above, plaintiff's policy was enforced as written and did not run afoul New Jersey law. Accordingly, plaintiff has not stated a claim for rescission or refund. Because plaintiff has not stated a claim for rescission, this Court need not address defendant's additional argument that this claim is barred under the filed rate doctrine.

    V.  Conclusion

For the foregoing reasons, defendant's motion to dismiss is granted.

                                                 /s/ Katharine S. Hayden

December 16, 2011                              Katharine S. Hayden, U.S.D.J.